UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THOMAS CLIFFORD REXROAT, JR., <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL, RYAN STATHAM, and, NANCY MARTHAKIS, M.D., <br><br> Defendants. | CASE NO. 3:20-CV-242-RLM-MGG |

OPINION AND ORDER

Thomas Clifford Rexroat, Jr., a prisoner without a lawyer, is proceeding in this case on three separate Eighth Amendment claims: (1) "an Eighth Amendment claim for money damages against Sergeant Statham for using excessive force against him on July 17, 2019"; (2) "an Eighth Amendment claim for money damages against Dr. Marthakis for acting with deliberate indifference to serious medical needs by providing inadequate treatment for the left shoulder since July 19, 2019"; and (3) "an injunctive relief claim against Warden Neal in his official capacity to obtain the medical care for his left shoulder as required by the Eighth Amendment." ECF 7 at 4-5. The defendants have filed summary judgment motions in which they argue that Mr. Rexroat didn't exhaust his administrative remedies as 42 U.S.C. § 1997e(a) requires. Mr. Rexroat filed a response and the defendants filed replies. Mr. Rexroat also filed a document titled "Rebuttal" and supplemental evidence in support of his opposition to the summary judgment motions. ECF 40, 41. While Northern District

of Indiana Local Rule 56-1 doesn't provide for the filing of either a surreply or supplemental materials, in the interests of justice, the court has considered the additional material.

Prisoners cannot bring an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999). The law takes a "strict compliance approach to exhaustion." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015).

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light

most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion can't just rely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." Trade Fin. Partners, LLC v. AAR Corp., 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit . . . ." Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).

The parties don't dispute that Mr. Rexroat's Eighth Amendment claims were grievable under the Offender Grievance Process, an administrative system established by the Indiana Department of Correction to internally resolve prisoner concerns and complaints regarding their conditions of confinements. Nor do they dispute that Mr. Rexroat submitted a formal grievance concerning the matters at issue in this lawsuit, or that the Grievance Specialist refused to consider that grievance on the ground that it was untimely. The Offender Grievance Process requires that the offender submit his formal grievance "no later than ten (10) business days from the date of the incident giving rise to the complaint or concern." ECF 30-1 at 9. Mr. Rexroat submitted his grievance on November 20, 2019, asserting that excessive force was used against him on July 17, 2019 by two correctional

3

officers.[1] The correctional officers allegedly broke or dislocated Mr. Rexroat's left clavicle when they "gripp[ed] [him] at [his] elbows" and "dragged" him to the medical unit after he suffered a seizure in his dormitory. ECF 30-3 at 2. Mr. Rexroat was then put in a concrete suicide cell from which he continuously complained about pain in his shoulder and put in at least three formal requests for an x-ray to be taken. Nothing was done about his complaints for some three and a half months. *Id.* An x-ray was finally taken and revealed that Mr. Rexroat had suffered a dislocated shoulder. *Id.* As of the filing of his grievance, Mr. Rexroat had "yet to be notified of the x-ray results in writing," and his left shoulder was "still in regular pain." *Id.*

If a grievance is properly rejected as untimely, the prisoner hasn't properly exhausted his administrative remedies. Pozo v. McCaughtrey, 286 F.3d at 1025. If the state misapplies its time limits or somehow prevents a prisoner from complying with them, the prisoner may be excused from his failure to exhaust his administrative remedies. *See* Woodford v. Ngo, 548 U.S. 81, 102 (2006) (stating that a prisoner can be excused from exhausting his administrative remedies if the grievance process was effectively unavailable to him). The issues here are whether the state properly applied its time limits to preclude Mr. Rexroat's grievance and whether Mr. Rexroat is excused from those time limits because the grievance process was unavailable to him.

---

[1] Mr. Rexroat did not know who the correctional officers were when he filed his grievance, but one was later identified to be Sergeant Statham.

Grievance Specialist Joshua Wallen says that Mr. Rexroat's grievance "listed the date of incident about which he was grieving as July 17, 2019," but he didn't file his grievance until more than four months later. ECF 25-1 at 9 (¶ 34). That Mr. Rexroat wrote "July 17, 2019" in the box on the grievance form asking for the "date of the incident" isn't dispositive of whether his grievance was timely. *See* Goroumi v. Marthakis, No. 3:19-CV-400 DRL-MGG, 2021 WL 1549735, at *2 (N.D. Ind. Apr. 19, 2021) (stating that "the [IDOC] Grievance Policy does not even require that [the prisoner] list a proper incident date"). Instead, to assess the timeliness of Mr. Rexroat's grievance, the court first will consider Mr. Rexroat's deliberate indifference claims against Warden Neal and Dr. Marthakis, and then consider his excessive force claim against Sergeant Statham.

## Deliberate Indifference Claims

The description of his complaint in the grievance form indicates that Mr. Rexroat was complaining about more than the initial incident in which he was injured; he was complaining about a continuing failure to treat the injury. This is shown by the "statement of your complaint" portion of the form, where Mr. Rexroat wrote that he was "still in regular pain," as well as in the "statement of relief" portion of the form, where Mr. Rexroat wrote that he "want[ed] the results from [his] x-ray" *and* that he "want[ed] to wake up in the mornings without pain." ECF 3-3 at 2. If it wasn't entirely clear from Mr. Rexroat's grievance as initially presented that he was complaining of an ongoing failure to treat, Mr. Rexroat clarified this aspect of his

5

grievance when he responded to the Return of Grievance. When Mr. Rexroat received the Return of Grievance, he sent Grievance Specialist Wallen a written request for an appeal form, stating that he wanted to contest the finding that his grievance was untimely. Mr. Rexroat explained that (1) his "left shoulder is noticeably broken"; (2) he is "in constant pain, some days worse than others"; (3) it seemed to him "like staff and medical are trying to wait [him] out"; and, most directly (4) *"[t]his is an ongoing issue."* ECF 1-1 at 15-16 (emphasis added).

Warden Neal and Dr. Marthakis characterize Mr. Rexroat's complaint as being limited to the x-ray, but that reading ignores those portions of the grievance that go beyond the x-ray in asking for medical treatment for his dislocated shoulder following the x-ray. A continued refusal to provide medical treatment lasts "for as long as the defendants ha[ve] the power to do something about [the medical] condition," and "every day" of failing to treat the condition is "a fresh infliction of punishment." Heard v. Sheahan, 253 F.3d 316, 318 (7th Cir. 2001) (discussing claim accrual for statute of limitations purposes). Like the defendant in Weiss v. Barribeau, 853 F.3d 873 (7th Cir. 2017), Warden Neal and Dr. Marthakis haven't "explain[ed] why it was too late [for Mr. Rexroat] . . . to file a grievance about an untreated injury that ha[s] caused continuous pain ever since the [incident] in which the injury had been inflicted." *Id.* at 874. Mr. Rexroat's grievance submissions alerted Grievance Specialist Wallen to the on-going nature of his complaint insofar as his medical treatment was concerned.[2]

---

[2] Dr. Marthakis argues that Mr. Rexroat's grievance didn't mention her by name. But Dr. Marthakis doesn't point to anything in the Grievance Process that would require the offender to identify the name of the responsible prison official in the grievance form. Indeed, "it would be unreasonable to expect that, for every set of facts, an inmate will be

Yet Grievance Specialist Wallen responded to Mr. Rexroat's request for an appeal form without acknowledging Mr. Rexford's clarification therein that he was complaining about a continuing harm.

Grievance Specialist Wallen refused Mr. Rexroat's request for an appeal form by stating that "[Mr. Rexroat] ha[d] no grievances logged to appeal." ECF 1-1 at 15. No grievances had been "logged to appeal," of course, because Mr. Rexroat's grievance had been rejected as untimely, and it was that finding which Mr. Rexroat was seeking to appeal. By refusing to consider Mr. Rexroat's grievance despite the presentation of an ongoing claim regarding lack of medical treatment, Grievance Specialist Wallen made the grievance process unavailable to Mr. Rexroat, thereby excusing his failure to exhaust.

### Excessive Force Claim

Mr. Rexroat's November 2019 grievance against Sergeant Statham for excessive force was untimely because it was filed well over ten days after the July 17, 2019, incident in which Sergeant Statham allegedly used excessive force. The only question for purposes of administrative exhaustion is whether grievance proceedings were "available" to Mr. Rexroat in the ten-day timeframe.

---

able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision." Glick v. Walker, 385 F. App'x 579, 582 (7th Cir. 2010). In addition, the grievance form itself didn't ask Mr. Rexroat to identify any prison officials by name, and Mr. Rexroat was never informed that his grievance was rejected for this reason. See Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011).

In his unsworn response to the summary judgment motion, Mr. Rexroat seeks to be excused from the administrative exhaustion requirement, arguing he was housed in a unit that was on lockdown for 23 hour a day beginning on the date of the incident through November 2019, and "every attempt to . . . get an understanding of the grievance process was an absolute battle." ECF 31 at 4. Mr. Rexroat also says that, when he returned to F-dorm, he was "finally advised on how to exhaust the grievance process, by Counselor Sizemore." *Id*. These vague, unsworn statements don't explain what Mr. Rexroat did or when he did it. An inmate must offer specifics about his attempts to exhaust to create a genuine issue of fact. *See* Schultz v. Pugh, 728 F.3d 619, 620 (7th Cir. 2013) (without specifics about why the prisoner was unable to exhaust, summary judgment for the defendants was proper); Dale v. Lappin, 376 F.3d 652, 655-656 (7th Cir. 2004) (observing that vague assertions are not sufficient to create a genuine issue that prison officials interfered with inmate's ability to exhaust).

As noted earlier, summary judgment "is the put up or shut up moment in a lawsuit . . . ." Springer v. Durflinger, 518 F.3d at 484. With the summary judgment motion, Mr. Rexroat was provided a copy of Northern District of Indiana Local Rule 56-1 and a notice which cautioned him "to carefully read—and follow—all the rules" because "[t]he outcome of this case may depend on it." ECF 28 at 1. Local Rule 56-1(b)(1(B) requires a party opposing a summary judgment motion to provide materials that raise a genuine issue with the response. Mr. Rexroat has not done so. His vague description of a "battle" to learn about the details of the grievance process

8

acknowledges he knew there was a grievance process. Yet Mr. Rexroat says nothing about what he did - or even whether he did anything - during the ten business days provided for filing a grievance following the event in question. He doesn't demonstrate the process was unavailable because he couldn't learn how to file a grievance. At most he implies he struggled at unknown times and in unknown ways to file a grievance he knew he needed to file. District courts "may strictly enforce local summary-judgment rules" even against parties who are unrepresented by counsel. McCurry v. Kenco Logistics Servs., LLC, 942 F.3d 783, 787 (7th Cir. 2019). Mr. Rexroat was given the opportunity to provide a specific explanation as to why he could not exhaust. His vague assertions don't create a genuine dispute, so summary judgment must be granted in favor of Sergeant Statham.

For these reasons:

(1)     The Motion for Summary Judgment filed by Dr. Marthakis (ECF 22) is DENIED; and

(2)     The Motion for Summary Judgment filed by Warden Neal and Sergeant Statham (ECF 27) is DENIED as to Warden Neal and GRANTED as to Sergeant Statham.

SO ORDERED on August 4, 2021.

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT