UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

THOMAS CLIFFORD REXROAT, JR.,

Plaintiff,

v.                                              CAUSE NO. 3:20-CV-242-MGG

RON NEAL and DR. MARTHAKIS,

Defendants.

OPINION AND ORDER

Thomas Clifford Rexroat, Jr., a prisoner without a lawyer, is proceeding in this

case on two claims. ECF 7. First, he is proceeding "on an Eighth Amendment claim for

money damages against Dr. Marthakis for acting with deliberate indifference to serious

medical needs by providing inadequate treatment for the left shoulder since July 19,

2019[.]" *Id.* at 4. Second, he is proceeding "on an injunctive relief claim against Warden

Neal in his official capacity to obtain the medical care for his left shoulder as required

by the Eighth Amendment[.]" *Id.* at 5. Specifically, Rexroat alleged in his complaint that

he has received constitutionally inadequate medical treatment for his left shoulder since

July 17, 2019, when correctional officers dislocated his shoulder by dragging him to the

medical unit after he suffered a seizure. ECF 6.

On March 18, 2022, the defendants filed a joint motion for summary judgment.

ECF 70. With the motion, the defendants provided Rexroat the notice required by N.D.

Ind. L.R. 56-1(f). ECF 74. Attached to the notices were copies of Federal Rule of Civil

Procedure 56 and Northern District of Indiana Local Rule 56-1. Pursuant to Local Rule

56-1(b)(1), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (A) a response brief; and (B) a Response to Statement of Material Facts, which includes a citation to evidence supporting each dispute of fact. This deadline passed nearly six months ago, but Rexroat has not responded.[1] Therefore the court will now rule on the defendants' motion for summary judgment.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary

---

[1] On June 10, 2022, Rexroat filed a "Status Report," which briefly addresses his claims against the defendants. ECF 84. The court will consider this document in ruling on the summary judgment motion.

judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does

not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Dr. Marthakis submits an affidavit, in which she attests to the following facts: During all times relevant to the complaint, Dr. Marthakis was employed as a physician at Indiana State Prison. ECF 73-1 at 1. On October 24, 2019, Rexroat submitted Healthcare Request # 073967, requesting an x-ray of his left shoulder. *Id.* at 3, 52. In this document, Rexroat indicated he had previously submitted requests for x-rays twice before in July 2019 and September 2019. *Id.* However, Rexroat's medical records contain no record of these prior requests, and indicate Healthcare Request # 073967 is the first healthcare request he submitted regarding his left shoulder. *Id.* at 3-4. In response to Healthcare Request # 073967, Rexroat was seen by a nurse on October 29, 2019, and the nurse referred him to Dr. Marthakis for a shoulder examination. *Id.* at 4, 52. Dr. Marthakis first became aware of Rexroat's shoulder complaints following that referral. *Id.* at 5.

On November 1, 2019, Dr. Marthakis first saw Rexroat regarding his left shoulder complaints. *Id.* at 4, 46-48. Rexroat indicated he could not lift his shoulder and arm more than 90 degrees. *Id.* Dr. Marthakis ordered an x-ray of his left shoulder, which was performed that same day. *Id.* at 4, 45, 49. A radiology report was issued, which indicated there was no acute bony abnormality or significant degenerative change in Rexroat's left shoulder. *Id.* at 4, 49. It also noted the acromio-clavicular and gleno-humeral joints appeared intact and no impingement syndrome was suggested, which indicates there was no fracture, dislocation, or deformity of the left shoulder. *Id.*

4

After November 1, 2019, Rexroat did not submit another healthcare request regarding his left shoulder until January 29, 2020. *Id.* at 4. In response to this request, Rexroat was seen by a nurse on February 13, 2020. *Id.* at 4, 30-31. The nurse notified Dr. Marthakis that Rexroat was complaining about pain in his left shoulder. *Id.* Because Dr. Marthakis knew there was no fracture, dislocation, or deformity in his left shoulder, she ordered that Rexroat receive Tylenol for his pain and be educated on exercises to increase his range of motion. *Id.* at 4-5, 30-31. Rexroat became frustrated, refused to take Tylenol, and left without further instruction. *Id.*  Rexroat's medical records indicate he did not complain about or seek treatment for his left shoulder after the February 13, 2020, nurse visit. *Id.* at 5. Because Rexroat does not dispute any of Dr. Marthakis' attestations, the court accepts them as undisputed.

Here, no reasonable jury could determine that Dr. Marthakis was deliberately indifferent to Rexroat's complaints of left shoulder pain. Specifically, the undisputed evidence shows: (1) the medical unit first received a healthcare request from Rexroat regarding his left shoulder pain on October 24, 2019; (2) in response to this request, Rexroat was seen by a nurse on October 29, 2019, and referred to Dr. Marthakis for a shoulder examination; (3) Dr. Marthakis first saw Rexroat regarding his left shoulder pain on November 1, 2019; (4) Dr. Marthakis ordered an x-ray, which was performed that same day; (5) the x-ray found no abnormality, fracture, dislocation, or deformity in Rexroat's left shoulder; (6) Rexroat next submitted a healthcare request regarding his left shoulder in January 2020; (7) in response to this request, Rexroat was seen by a nurse on February 13, 2020, and ordered Tylenol and exercises to increase his range of

5

motion; and (8) Rexroat never complained or sought any further treatment for his left shoulder after the February 13 nurse's visit. Rexroat provides no evidence he required any additional treatment for his left shoulder or the treatment provided by Dr. Marthakis was "plainly inappropriate."

In his complaint, Rexroat alleged Dr. Marthakis was deliberately indifferent for delaying medical care, as he submitted health care requests in July 2019 and September 2019 but did not receive an x-ray until November 1, 2019. ECF 6 at 4. But Dr. Marthakis attests the medical unit first received a healthcare request from Rexroat related to his left shoulder on October 24, 2019, and that she was not aware of any issue with Rexroat's shoulder before she saw him on November 1, 2019. Rexroat provides no evidence disputing these attestations. Moreover, even assuming Dr. Marthakis delayed in providing Rexroat an x-ray, there is no evidence that any delay had a detrimental effect on Rexroat's condition, as the x-ray ultimately found no issues with Rexroat's shoulder. *See Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996) (agreeing with the Eighth Circuit that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed"); *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007) (stating that plaintiff must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm"). Thus, because Rexroat provides no evidence that (1) Dr. Marthakis was aware of any issue with his shoulder prior to November 1, 2019, or (2) any delay in providing an x-ray had a detrimental effect on his condition, no reasonable jury could

conclude Dr. Marthakis was deliberately indifferent for delaying treatment for Rexroat's shoulder. Summary judgment is warranted in favor of Dr. Marthakis on this claim.

Regarding Rexroat's injunctive-relief claim, the defendants argue there is no evidence Rexroat is receiving constitutionally deficient medical care for his shoulder because he received adequate treatment from Dr. Marthakis and has neither complained about nor sought treatment for his left shoulder in the past two years. ECF 71 at 11. Here, it is undisputed that an x-ray performed in November 2019 found no evidence of any abnormality, fracture, dislocation, or deformity in Rexroat's left shoulder, and that Rexroat has not sought any treatment for his left shoulder since his February 13, 2020, nurse's visit. Because Rexroat provides no evidence he is currently being denied constitutionally adequate treatment for his left shoulder, he is not entitled to injunctive relief. Summary judgment is warranted in favor of Warden Neal on this claim.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 70); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Thomas Clifford Rexroat, Jr., and to close this case.

SO ORDERED on October 18, 2022

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge